[Cite as *Sherrick v. Page*, 2024-Ohio-2600.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

RICHARD SHERRICK,

        Plaintiff-Appellee,

- vs -

KIMBERLY GRACE PAGE,

        Defendant-Appellant.

CASE NO. 2023-G-0042

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2017 CU 000241

# O P I N I O N

Decided: July 8, 2024
Judgment: Affirmed

*J. Michael Drain, Jr.*, 147 Bell Street, Suite 202, Chagrin Falls, OH 44022 (For Plaintiff-Appellee).

*Kimberly Grace Page*, pro se, 534 South 12th Street, Quincy, IL 62301 (Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Kimberly Page, appeals from the Geauga County Court of Common Pleas, Juvenile Division's, judgment ordering her to pay child support to plaintiff-appellee, Richard Sherrick. For the following reasons, we affirm the judgment of the lower court.

{¶2} On September 5, 2017, Sherrick filed a Petition to Determine Parental Rights and Responsibilities in relation to J.S. and S.S., whose mother is Page. On the same day, he filed an Emergency Motion for Custody, alleging that Page had "absconded with the children" and moved to Texas. On April 19, 2018, a Judgment Entry was entered

stating the parties had agreed to a Shared Parenting Plan and it was made an order of the court. The Shared Parenting Plan designated Sherrick as the residential parent for school purposes and set forth a parenting time schedule.

{¶3} On June 5, 2019, Page filed a Motion to Terminate Shared Parenting Plan, alleging that Sherrick had failed to abide by the terms of the plan. On September 24, 2019, the court issued a Judgment Entry finding that the parties had reached an agreement and adopted the agreement, under which, inter alia, Page would be the residential parent for school purposes for S.S. for 2019-2020 and those provisions not otherwise amended from the Shared Parenting Plan would remain in effect.

{¶4} In May and September of 2020, Sherrick filed Motions for Custody on the grounds that Page failed to return the children to him for his parenting time. On November 2, 2020, he filed an Emergency Ex Parte Motion for similar reasons. The court issued an order on the same date granting Sherrick custody and suspending Page's custodial rights. The court subsequently granted therapeutic visitation to Page.

{¶5} On May 23, 2022, Sherrick filed a Motion to Establish Child Support. On March 10, 2023, Page filed a Motion for Temporary Companionship/Visitation and, in September, she filed a Motion for Custody.

{¶6} On October 4, 2023, the court issued a Judgment Entry, finding that the parties had reached a resolution on issues regarding custody, companionship, and show cause motions which were addressed in a separate judgment. It noted that it held a hearing on the remaining issue of child support. It found that, pursuant to the parties' agreement, Sherrick was residential parent and Page has companionship with the children. It found that Page had moved from Ohio to Iowa and "will be responsible for all

2

Case No. 2023-G-0042

transportation expenses for her companionship with the minor children per the Parties['] agreement. As Mother is paying for all travel expenses for the minor children the Court finds a deviation of $50.00 per month of child support is fair and equitable and in the minor children's best interest." It found that Page owns her own business, which was not making a profit, and testified she is capable of minimum wage employment. It imputed to Page an annual income of $21,008. It ordered Page to pay a total monthly support obligation for the children in the amount of $144.75 per month beginning September 18, 2023. It found that the children are covered on health insurance through the state "as neither Mother or Father have health insurance available to them at reasonable expense."

{¶7} Page appeals from that entry. In her brief, she does not specifically set forth "assignments of error," include citations to the record, or cite to any legal authority in support of her arguments. Pursuant to App.R. 16(A)(3) and (7), an appellant's brief must include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected," as well as "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Page's brief did not comply with these requirements, nor did she provide a transcript. An appellant "'bears the burden of affirmatively demonstrating error on appeal.'" (Citation omitted.) *State v. Herron*, 2010-Ohio-2050, ¶ 16 (11th Dist.). "It is not the obligation of an appellate court to search for authority to support an appellant's argument as to an alleged error." (Citation omitted.) *Id.* Nonetheless, while we may disregard an assignment of error that fails to comply with App.R. 16, in the interest of justice, we will address Page's arguments to the extent

3

possible from her brief. *See State v. Laudermilk*, 2022-Ohio-659, ¶ 37 (11th Dist.) ("[n]evertheless, this court will attempt to address [appellant's] assignments of error despite his complete lack of legal authority or cohesive arguments"); *Schneider v. Schneider*, 2021-Ohio-1058, ¶ 62-63 (11th Dist.) ("we will address [appellant's] arguments" despite his failure to cite legal authority).

{¶8} Page argues that the trial court erred in ordering she pay child support since this issue was already settled by the parties, noting that the parties had "[p]reviously . . . agreed to no support . . . as evidenced by the prior 6 years that neither party paid child support to the other while enjoying joint custody of their minor children."

{¶9} "A trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed save a showing of an abuse of discretion." (Citation omitted.) *Truckey v. Truckey*, 2019-Ohio-3232, ¶ 10 (11th Dist.). "[T]he term 'abuse of discretion' is one of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record." (Citation omitted.) *Shorts v. Shorts*, 2008-Ohio-2317, ¶ 13 (11th Dist.). An abuse of discretion is the court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting Black's Law Dictionary (8th Ed. 2004).

{¶10} R.C. 3109.04(E)(2)(a) provides that a trial court may reject the parties' modification of the terms of a shared parenting plan approved by the court if they are not in the best interests of the child. Further, pursuant to R.C. 3109.04(E)(2)(b), the court may modify the terms of such plan "upon its own motion" or at the request of one of the parents when it is in the best interests of the child. A court can modify "the amount of child support owed" under R.C. 3109.04(E)(2). *In re Marriage of Heidnik*, 2013-Ohio-

4

1289, ¶ 34 (11th Dist.), citing *Fisher v. Hasenjager,* 2007-Ohio-5589, ¶ 30-31.

{¶11}  Courts have consistently held that a trial court "does not avoid its obligation to independently consider child support awards simply because the parties have agreed on a child support amount."  *Nichols v. Nichols*, 2013-Ohio-3927, ¶ 16 (10th Dist.); *Hoff v. Hoff*, 2013-Ohio-1955, ¶ 11 (12th Dist.) ("[a]s watchdog, the trial court has the discretion to decline an agreement regarding child support, even if the parties reached an agreement as to the parties' respective child support obligations or how such would be calculated").  In *DePalmo v. DePalmo*, 78 Ohio St.3d 535, 540 (1997), the Ohio Supreme Court held: "The law favors settlements.  However, the difficult issue of child support may result in agreements that are suspect.  In custody battles, choices are made, and compromises as to child support may be reached for the sake of peace or as a result of unequal bargaining power or economic pressures.  The compromises may be in the best interests of the parents but not of the child.  Thus, the legislature has assigned the court to act as the child's watchdog in the matter of support."  Page's assertions that there should be finality due to settlement of this issue previously is contrary to such authority.

{¶12}  Page contends that the trial court erred in imputing income to her "without adequately analyzing the prior finances of the parties" or requiring W2 statements or tax returns.  She also argues that the court failed to consider Sherrick's earning capacity and voluntary underemployment in determining support.

{¶13}  "When calculating child support, the trial court must . . . determine the annual gross income of each parent," including the potential income "of a parent the court determines to be voluntarily unemployed or underemployed.".0000000000 *Lake Cty. Dept. of Job and Family Servs. v. Bailey*, 2020-Ohio-986, ¶ 25 (11th Dist.); *Rock v. Cabral*,

5

Case No. 2023-G-0042

67 Ohio St.3d 108, 111 (1993).  "Whether a parent is 'voluntarily underemployed' within the meaning of [the statute], and the amount of 'potential income' to be imputed to a child support obligor, are matters to be determined by the trial court based upon the facts and circumstances of each case."  *Rock* at syllabus.  "Imputed income that . . . the parent would have earned if fully employed" is determined from considering criteria including, inter alia, employment experience; education; availability of employment; the ability of the parent to earn the imputed income; and any other relevant factor.  R.C. 3119.01(C)(18)(a)(i)-(xi).

{¶14}  As an initial matter, we observe that transcripts of the hearing on child support were not made part of the record.  The documents filed by the clerk in transmitting the record indicated "no transcripts" were part of the record.  There are no docket entries indicating such transcripts were filed.  There was a filing made by Page's counsel in the Court of Common Pleas, requesting that the "court reporter . . . include in the record a transcript of all the court proceedings of all the hearings in this case," but it is not evident from the record that further arrangements for transcription were made or that the completion of the transcripts was paid for by Page.  Page's brief does not demonstrate that transcripts were completed or filed, given that she includes no references to quotations from the hearing or page references to any transcript.

{¶15}  "The duty to provide a transcript for appellate review falls upon the appellant."  *Crawford v. Kirtland Local School Dist. Bd. of Edn.*, 2018-Ohio-4569, ¶ 76 (11th Dist.), quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980); *see* App.R. 9(B)(1) ("[i]t is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record . . . are transcribed in a form that

6

meets the specifications of App.R. 9(B)(6)"). "This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record." (Citation omitted.) *Crawford* at ¶ 76. "Without transcripts to review, this court has no choice but to presume the validity of the lower court's proceedings and affirm." *Lloyd v. Thornsbury*, 2021-Ohio-240, ¶ 89 (11th Dist.).

{¶16} Given the lack of a transcript, this court is unaware of what evidence or testimony was presented at the hearing in support of the conclusion that income should be imputed to Page. We cannot conclude that there was a lack of evidence regarding her financial condition or other factors allowing for the imputation of income. Similarly, although she argues that the court failed to take into consideration Sherrick's earning capacity and underemployment, she does not point to anything in the record from which we could determine error in this regard. *See Hardman v. Hardman*, 2006-Ohio-1793, ¶ 21 (11th Dist.) (a party claiming underemployment "has the burden of proof on that issue") (citation omitted).

{¶17} Page also argues "bias" by the court in relation to imputing income but does not point to any examples of such bias. What she characterizes as bias appears to be disagreement with the decision to order child support. Nonetheless, issues of bias are properly raised through the process delineated in R.C. 2701.03 and a determination of bias is "within the exclusive jurisdiction of the Chief Justice of the Supreme Court of Ohio." (Citation omitted.) *Sankey v. Fasano*, 2018-Ohio-3107, ¶ 17 (11th Dist.).

{¶18} Page next contends that, while the trial court judge asked if she would cover travel expenses in return for a reduced child support order, it erred in assigning a $50 deviation from the support order for travel costs given that "[t]he cost of gasoline to and

7

from Ohio alone is greater than the amount of support ordered."

{¶19} A trial court's decision on whether to grant a deviation for travel expenses is evaluated for an abuse of discretion. *Walker v. Walker*, 2010-Ohio-5798, ¶ 31 (11th Dist.).

{¶20} As an initial matter, we again note that the transcript was not made part of the record to show what discussions were had regarding the deviation and what, if any, evidence was presented to demonstrate the cost of travel. We find nothing presented by Page to demonstrate that the trial court abused its discretion in finding a deviation in her support of $50 per month. The trial court is permitted, but not required, to grant a deviation for travel expenses and such deviation should only be granted if it is in the children's best interest. *See id.* at ¶ 30 ("[a]lthough the trial court is permitted to deviate from the standard child support guidelines, it is not mandated to do so"); *Carney v. McNally*, 2023-Ohio-148, ¶ 13 and 17 (5th Dist.). The court was within its discretion to determine that some deduction to defray Page's travel expenses was appropriate while still finding that the children required financial support. Courts have observed the difficulty in setting travel expenses which consistently fluctuate and emphasized the discretion to be given to the trial court to fix such expenses. *McNally* at ¶ 16-17. It should also be noted that Page moved out of state which necessitated the increased transportation costs, a factor which, while not determinative, can impact a court's finding on this issue. *See Corple v. Corple*, 123 Ohio App.3d 31, 36 (7th Dist. 1997) ("[i]t is not unreasonable for appellant to assume responsibility for the increased travel obligations arising from her relocation").

{¶21} Page further argues that the trial court "disregarded . . . the availability of

8

reasonable healthcare options for the children through both Mother and Father, holding the children on state-funded Medicaid." She does not expand, however, on how the court erred in this regard. She does not point to what other healthcare options were available or provide legal authority to support a conclusion that the court erred in its order on healthcare.

{¶22} Finally, Page raises several issues alleging ineffective assistance of trial counsel, arguing counsel did not effectively represent her at trial or in pursuing her appellate rights, did not represent her wishes, and that such errors require the grant of a new trial.

{¶23} It has been held that "[p]arties in civil litigation choose their own counsel who, in turn, choose their theories of prosecuting and defending. The parties, through their attorneys, bear responsibility for framing the issues and for putting both the trial court and their opponents on notice of the issues they deem appropriate for jury resolution." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997). "An unsuccessful civil litigant may not obtain a new trial based upon the bare assertion that his or her attorney was ineffective. . . . If an attorney's representation has fallen below professional standards, remedies are available in a malpractice action." (Citations omitted.) *Id.* This principle has been applied in appeals involving custody and support related issues. *Lambert v. Lambert*, 2005-Ohio-2259, ¶ 32 (11th Dist.) ("appellant cannot obtain recourse through a claim of ineffective assistance of counsel" and "[a] more appropriate remedy would have been through a malpractice action"); *Wolford v. Wolford*, 2009-Ohio-5459, ¶ 8 and 32 (4th Dist.) (ineffective assistance of counsel could not be raised in relation to proceedings for visitation and child support); *In re L.A.*, 2024-Ohio-1241, ¶ 12 (3d Dist.) (litigants can

9

attack judgments on the basis of ineffective assistance of counsel in criminal matters or permanent custody proceedings, but not in other civil matters such as those relating to legal custody or visitation).  Thus, we decline to address the issues Page raises relating to ineffective assistance of counsel.

{¶24}  Page's arguments are without merit.

{¶25}  For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.  Costs to be taxed against appellant.


EUGENE A. LUCCI, P.J.,

JOHN J. EKLUND, J.,

concur.